**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| 1.  ROBERT H. BRAVER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No. 5:22-cv-00710-R |
| | ) |
| 1.  CLEAR SKY FINANCIAL, LLC, a Florida | ) |
| Limited Liability Company, | ) |
| 2.  CM SOLUTIONS, an unregistered entity, | ) |
| 3.  ANTHONY FRANCISCO, an individual, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S SUPPLEMENTAL RESPONSE TO DEFENDANT ANTHONY
FRANCISCO'S MOTION TO DISMISS WITH BRIEF IN SUPPORT**

Comes now Plaintiff Robert H. Braver ("Braver") and hereby files his supplemental

response to *Defendants Clear Sky Financial and Anthony Francisco's Motion to Dismiss

with Brief in Support* (Doc. No. 11) (hereafter "*Motion to Dismiss*" or "*Motion*") as

follows:

**SUPPLEMENTAL FACTS**

In response to Braver's jurisdictional discovery, Defendant Anthony Francisco

("Francisco") has disclosed the following facts: Francisco has admitted to being the sole

managing member of Clear Sky Financial, LLC ("CSF"). See *Defendant Anthony

Francisco's Response to Plaintiff's Jurisdictional Interrogatories* ("Interrogatory") No.

4, attached as Exhibit "1", page 4. Francisco has admitted to overseeing CSF's business.

See Interrogatory No. 13, attached as Exhibit "1", page 6. Francisco has admitted that, on

behalf of CSF, he made the decision to hire a third-party vendor to generate "TCPA

1

compliant" leads, but denies directing the vendor to make calls to Oklahoma or being aware that it was doing so. See Interrogatory No. 12, attached as Exhibit "1", page 5. Francisco specifically admits to hiring the third-party that made the June 1, 2022 call to Braver. See *Defendant Anthony Francisco's Response to Plaintiff's Jurisdictional Requests for Admission* ("RFA") No. 2, attached as Exhibit "2", page 1.

In addition, Braver alleges or re-alleges the following facts relevant to the issue of personal jurisdiction: As stated in the *Complaint*, the first live person Braver spoke to on June 1, 2022 asked for and received Braver's billing zip code. See *Complaint*, para. 30. Braver alleges that he gave his zip code located in Norman, Oklahoma. During the June 1, 2022 call, Braver also gave his full address to the individual who identified himself as "David J. Crawford". See *Complaint* at para 46. Braver alleges that he gave his residential address located in Norman, Oklahoma.

Braver also alleges that, after this call, he received and signed a document titled "CMS Credit Card Authorization Form", which gave his residential address located in Norman, Oklahoma. During the June 1, 2022 call, the individual who identified himself as "Nathan" from CSF's verification department stated that CM Solutions handles the billing for CSF. See *Complaint* at para. 53. Braver alleges that the Engagement Agreement he received from CSF also states that the $7,000 charge on his credit card will appear as "CM Solutions".

In addition, as alleged in the *Complaint*, Braver initially received a prerecorded message. See *Complaint* at para. 27. Braver then spoke to four individuals identified as "Doe 1", "Doe 2", "David J. Crawford", and "Nathan". See *Complaint* at para. 28, 33, 41,

and 50. These transfers were initiated by the individuals speaking to Braver and directly connected him from the initial prerecorded message to an employee of CSF.

Finally, Braver alleges that the leads the third-party vendor generated at Francisco's behest were nationwide in scope and that Francisco did not limit their geographic reach. Braver further alleges that even if the geographic reach of the third-party leads was limited, Francisco ratified the conduct of his agents by entering into a contract with an Oklahoma resident and accepting the benefit of doing business in Oklahoma.

## I.    The Court Has Personal Jurisdiction Over Francisco Because of His Conduct and the Conduct of CSF and Its Agents

### A.  Specific Personal Jurisdiction

The analysis of specific personal jurisdiction is threefold. First, the defendant must have "purposefully directed [its] activities at residents of the forum." *Hood v. American Auto Care, LLC*, 21 F.4th 1216, 1221 (10th Cir. 2021) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174 (1985)). Second, the suit must "arise out of or relate to those activities." *Hood*, at 1221. Third, even if the first two requirements are met, the court may not exercise personal jurisdiction if the defendant presents a compelling case that doing so offends "traditional notions of fair play and substantial justice." *Burger King Corp.*, at 476-77.

Here, the second and third elements of specific personal jurisdiction are easy to satisfy. First, the suit plainly arises out of the Francisco's activities. Braver has pled that

he was called 19 times by Francisco's agents in violation of the Telephone Consumer Protection Act and other law. Those actions form the basis of this suit.

Second, there is no compelling case to demonstrate that exercising personal jurisdiction over Francisco offends traditional notions of fair play or substantial justice. Braver has alleged that Francisco's agents directed business activity to Oklahoma and Francisco accepted the benefit of doing business with an Oklahoma resident. It offends neither fair play nor substantial justice to hold an individual accountable to a jurisdiction where they seek out and accept business.

Francisco's argument seems to be that he did not purposefully direct any activity to Oklahoma because he did not personally place any of the calls to Braver. If this personal conduct was required, then Francisco would be correct. However, long standing agency principles hold that he is liable for the conduct of his agents and, as such, their conduct can be imputed to him for purposes of establishing personal jurisdiction.

**B. The Court has Personal Jurisdiction Over Francisco Because There is An Agency Relationship Between Him and the Third-Party Who Placed The Calls to Braver**

For the last decade, the Federal Communications Commission has held that sellers are vicariously liable under the TCPA for the conduct of their agents. See *May 2013 FCC Ruling*, 28 FCC Rcd. 6574 (8). This liability flows from long standing principles of agency relationships.

There are three pertinent agency relationships: actual authority, apparent authority, and ratification. All of these agency relationships can be established in this case.

First, under the theory of actual authority, the agent has the actual or implied authority to engage in an action on the principal's behalf. *Mohon v. Agentra LLC*, 400 F.Supp.3d 1189, 1235(D. N.M. 2019). Here, the Court can find that the third-party vendor had actual authority to place the calls to Braver because Francisco admitted to hiring that vendor to perform that very act. Francisco has admitted to hiring the third-party vendor who placed the calls to Braver. Specifically, Francisco has admitted to hiring the vendor who placed the June 1, 2022 call to Francisco. As such, by Francisco's own admission, the vendor was acting as his agent when engaging in the conduct complained of. Therefore, the third-party vendor had actual authority from Francisco to act as his agent.

Second, apparent authority "results from a manifestation by a person that another is his agent, the manifestation being made to a third person and not, as when authority is created, to the agent." *Master Commodities, Inc. v. Texas Cattle Management*, 586 F.2d 1352, 1358 (10th Cir. 1978). The Court can also find that the third-party vendor had the apparent authority to act as Francisco's agent. From the first to last person Braver spoke to, the vendor initiated a series of transfers connecting him to Francisco's company, CSF. The vendor initiated the call to Braver by playing a prerecorded message. Then, Braver spoke to "Doe 1" who later transferred Braver to "Doe 2". "Doe 2" eventually transferred Braver to "David J. Crawford" who in turn transferred Braver to "Nathan" from CSF's verification department. Through these actions, CSF represented to Braver that the vendor was acting as its agent because the vendor directly connected Braver to CSF – the

5

principal in this agency relationship. As a result, there are sufficient facts alleged to establish an agency relationship of apparent authority between the vendor and Francisco.

Third, ratification creates an agency relationship after the agent's action when the principal manifests their assent to that action. *Mohon*, at 1236. Francisco ratified the vendor's actions by entering into a contract with Braver resulting from the June 1, 2022 call. Francisco's agent twice asked for Braver's billing zip code. Each time, he gave them his zip code located in Norman, Oklahoma. The "CMS Credit Card Authorization Form" sent to Braver contains his residential address in Norman, Oklahoma. Francisco may claim that he did not direct his agents to place calls to Oklahoma or know that they were doing so. But it is apparent from these facts that he knew he was doing business with an Oklahoma resident. This business was fed to Francisco by his agents and he ratified their conduct by accepting the benefit of that business. Thus, there are sufficient facts alleged to establish ratification by Francisco of his agent's conduct.

In a similar case, the District Court of Nevada held that a consumer pled sufficient facts to establish an agency relationship between the defendants and the agent who directly violated the TCPA. *Kristensen v. Credit Payment Services*, 12 F.Supp.3d 1292, 1301-02 (D. Nev. 2014). In *Kristensen*, the consumer pled a "downhill" series of relationships from the entity that first contacted him to the entity that received the ultimate benefit. *Kristensen*, at 1302. The court found that all of actual authority, apparent authority, and ratification were well-pled and that the viability of any one theory was enough to deny the defendants' motion to dismiss. *Id.* Finally, the court also held that it was unnecessary for the consumer to plead every nuance of the agency relationship at

this stage of litigation. *Id.* Likewise, in this case, Braver has sufficiently pled a series of relationships connecting the agent to the principal. Even if Braver cannot allege every nuance of the relationship at this stage, the allegations are more than sufficient to deny Francisco's *Motion*.

While the FCC ruling and cited cases discuss liability, they are pertinent to establishing specific personal jurisdiction over Francisco. Such agency relationships have been held sufficient to establish specific personal jurisdiction. *Mestas v. CHW Group Inc.*, 508 F. Supp. 3d 1011 (D. N.M. 2020). In *Mestas*, a consumer sued a business and one of its corporate officers for violations of the TCPA and state law. *Mestas*, at 1018. The corporate officer moved to dismiss the complaint for lack of jurisdiction, alleging that there were no allegations connecting him to the agent who placed the call to the consumer. *Id.* at 1020. In denying the corporate officer's motion, the court found that the complaint alleged he thoroughly dominated and controlled the company, authorized the calls to take place, and approved the contract with the agent. *Id.* at 1020-21.

The instant case is nearly identical. Francisco has admitted to hiring the vendor who placed the calls to Braver. Francisco has admitted to entering into a contract with the vendor to generate leads. Francisco has admitted to being the sole managing member of CSF. Thus, he dominates and controls CSF to such a degree that he is bound by its actions as he would be with any other agent. To the extent that Francisco claims that there is no agency relationship between the third-party vendor and himself, such an argument is unavailing under *Mohon*. Cf. *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892, 898 (W.D. Tex. 2001) (establishing personal liability over a corporate officer for

violations of the TCPA if he "personally authorized the conduct found to have violated the statute."). These facts, conclusively established through jurisdictional discovery, are sufficient to establish personal jurisdiction over Francisco.

In its May 2013 ruling, the FCC took great pains to justify the policy reasons for its decision. "We see no reason that a seller should not be liable … for calls made by a third-party telemarketer when it has authorized that telemarketer to market its good or services. In that circumstance, the seller has the ability, through its authorization, to oversee the conduct of its telemarketers, even if that power to supervise is unexercised." *May 2013 FCC Ruling*, 28 FCC Rcd.at 6593. This rationale is also found in cases like *American Blastfax* because failing to hold otherwise would allow individuals to violate the TCPA with impunity. *American Blastfax, Inc.*, at 898. See also *Physicians Healthsource, Inc. v. A-S Medication Sols. LLC*, 324 F.Supp.3d 973, 983 (N.D. Ill. 2018) (following the holding in *American Blastfax* and further finding that requiring knowledge of the wrongful conduct is at odds with the majority of opinions); *Maryland v. Universal Elections*, 787 F. Supp.2d 408, 416 (D. Md. 2011) ("if an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force."); *Versteeg v. Bennett, Deloney & Noyes, PC*, 775 F. Supp.2d 1316, 1322 (D. Wyo. 2011) (finding persuasive the reasoning in *American Blastfax*).

This same rationale applies as much to specific personal jurisdiction as it does to personal liability. It would make the TCPA just as ineffectual to allow an individual to hire a third-party to place calls to consumers in another state and then claim that he had no connection with that state.

8

II.    **CONCLUSION**

Specific jurisdiction requires purposeful direction to the forum state and a sufficient relationship between the claim and forum contacts. Moreover, in a TCPA case, a court has personal jurisdiction over a corporate officer when there are sufficient facts alleged connecting them to the agent who placed the call. Courts have long held that corporate officers are liable under the TCPA when they sufficiently control their company's activities. Finally, under theories of actual authority, apparent authority, and ratification, a principal is liable for the conduct of their agent.

In this case, Francisco, through his company and its agents, purposefully directed calls to Oklahoma. Even if Francisco did not ask for the vendor to place calls to Oklahoma or know that it was doing so, he did not limit the geographic scope of the calls that the vendor placed. Moreover, he accepted the benefit of his agent's conduct by taking money from and entering into a contract with an Oklahoma resident. By doing so, Francisco ratified the vendor's conduct.

Moreover, the June 1, 2022 call that Francisco's vendor placed to Braver was neither random nor fortuitous. Braver has alleged that it was merely one of 19 calls that Francisco's vendor placed to him. Braver was specifically targeted by Francisco's vendor. As such, the claim and the forum contacts are directly related. Even indirectly, the claims are sufficiently related to Francisco's contacts with Oklahoma because his agent placed 19 calls to an Oklahoma resident.

Francisco cannot direct that nationwide calls be made, accept the benefit of doing business in Oklahoma, and then insulate himself from this Court's reach by claiming

9

ignorance of his agent's conduct. Doubtless, it is precisely why Francisco has leads generated this way. But agency principles do not permit this. He has availed himself of the benefits of doing business in this jurisdiction and must now be subject to its judicial system.

For the reasons discussed above, the Court should deny Francisco's *Motion to Dismiss* for lack of personal jurisdiction.

By:   /s/ Evan Humphreys
     Evan Humphreys, OBA #33008
     The Law Office of Evan Humphreys, PLLC
     PO Box 2221
     114 NE 5th Street
     Guymon, Oklahoma 73942-4315
     Phone: (580) 219-5700
     evan@guymonattorney.com

     David Humphreys, OBA #12346
     Luke Wallace, OBA #16070
     Paul Catalano, OBA #22097
     Humphreys Wallace Humphreys, P.C.
     7715 East 111th Street, Suite 106
     Tulsa, OK 74133
     (918) 747-5300 / (918) 471-2223 (Fax)
     david@hwh-law.com
     luke@hwh-law.com
     paul@hwh-law.com
     **ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that on the above file stamped date, a copy of the foregoing document was served upon all counsel of record via CM/ECF.

Patrick H. Lane
Jordan M. LePage
Grant P. Scowden
Ball Morse Lowe PLLC
plane@bml.law

10

jlepage@bml.law
gscowden@bml.law

James A. Peterson
Peterson Legal P.A.
james@petersonlegal.com
**ATTORNEYS FOR DEFENDANTS Clear Sky Financial LLC, Anthony Francisco**

      /s/ Evan Humphreys
      Evan Humphreys

11